# In the United States Bankruptcy Court for the Southern District of Georgia
## Statesboro Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| SCANWARE, INC. | ) | |
| (Chapter 11 Case <u>08-35848 -rld</u> | ) | Number <u>08-6030</u> |
|   pending in the District of Oregon) | ) | |
| | ) | |
|                *Debtor* | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| | ) | United States Bankruptcy Court |
| | ) | Savannah, Georgia |
| | ) | By lbarnard at 4:12 pm, Feb 25, 2009 |
| RAYONIER WOOD PRODUCTS, | ) | |
|   L.L.C. | ) | |
| | ) | |
|                *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCANWARE, INC. | ) | |
| and | ) | |
| FINSCAN, OY | ) | |
| | ) | |
|                *Defendants* | ) | |

## MEMORANDUM AND ORDER
## ON PLAINTIFF'S MOTION FOR REMAND AND/OR FOR ABSTENTION
## AND ON DEFENDANT'S MOTION TO TRANSFER VENUE

### FINDINGS OF FACT

Rayonier, a Delaware corporation with its principal place of business at 50 North Laura Street, Suite 1900, Jacksonville, Florida, operates a sawmill near Swainsboro

AO 72A
(Rev. 8/82)

in Emanuel County, Georgia. Complaint, Dckt.No. 9, Exhibit A, ¶ 1 (November 21, 2008); Debtor's Answer, Dckt.No. 9, Exhibit C, ¶ 1; FinScan's Answer and Cross Claim, Dckt.No. 9, Exhibit D, ¶ 1. FinScan, a Finnish company based in Espoo, Finland, designs and manufactures real time image processing software, cameras, and interface boards which are used for grading lumber when combined with other related equipment and systems. FinScan sells its software and equipment to various third parties. Affidavit of Jaakko Rihinen, Dckt.No. 10, Part 4, ¶ 2 (Dec. 22, 2008). Debtor, an Oregon corporation, purchases products from FinScan, Id., integrates them into stand-alone automated systems that Debtor builds, and sells this new system to lumber mills in order to grade lumber. *See* Motion to Remand, Dckt.No. 9, Exhibit A, pg. 14-17. Prior to acquiring a 100% ownership of Debtor in October 2007, FinScan held a minority interest in Debtor. Affidavit of Jaakko Rihinen, Dckt.No. 10, Part 4, ¶ 4.

In May 2006, Rayonier and Debtor entered into a contract (the "Contract") under which Debtor was to provide Rayonier, at its wood products facility in Emmanuel County, a Planermill Trimmer Optimization System ("System"), a system which was intended to perform better than 95% on grade performance pursuant to Southern Pine Inspection Bureau and Timber Products Inspection rules.[1] Motion to Remand, Dckt. No. 9, Exhibit C, pg. 2, ¶ 15; Exhibit A, pg. 13 & 19. This Contract also provides a choice of law

---

[1] The SPIB promulgates rules followed by the industry as to the grading of lumber. The TPI is a duly recognized organization that monitors and confirms compliance with industry standards. Sawmills must perform at 95% on grade or better to comply with industry standards.

provision that any dispute arising under and in connection with the Contract shall be litigated before the courts of Emanuel County, Georgia. Specifically, it provides that Debtor and Rayonier agree:

> 1) "not to seek a change of venue;"
>
> 2) not "to dismiss the action on the grounds of forum non conviens" (sic); and
>
> 3) "not to remove any litigation from that court to federal court."

Id., Exhibit A, pg. 26, ¶ 26. FinScan was not a signatory to the Contract and did not see the Contract until Rayonier served the summons and complaint upon FinScan in Finland in late September 2008. See Id., Exhibit A, pg. 22; Affidavit of Jaakko Rihinen, Dckt.No. 10, Part 4, ¶ 3. However, the Contract specifically identifies a FinScan product, the Boardmaster FS4NT software, and FinScan's user manual for the software was given to Rayonier with the System. Motion to Remand, Dckt. No. 9, Exhibit A, pgs. 11 & 29.

On June 17, 2008, Rayonier filed a complaint in the Superior Court of Emanuel County, State of Georgia, against Debtor and FinScan. Rayonier claims that both defendants breached the Contract when the System failed to perform "better than 95% on grade performance pursuant to SPIB and TPI inspections." Second, Rayonier claims that both defendants breached the warranty located in paragraph 1.1 of the contract which

AO 72A (Rev. 8/82)

warranted the System would perform in accordance with the intended use and specifications in the Contract. Third, Rayonier argues that it notified the defendants that the System was defective and failed to meet the specifications set forth in the contract, thus properly rejecting the defective goods. Last, Rayonier claims FinScan breached its express warranty provided in the BoardMaster-GS4NT and -FS4NT User's Manual and also its implied warranty. Rayonier is asking for approximately $2 million in damages. Motion to Remand, Dckt.No. 9, Exhibit A.

Debtor has sold twenty-four lumber grading systems to lumber mills in North America. Three of those systems have generated claims: Rayonier, Interfor Pacific, Inc. ("Interfor") and Banks Lumber Co. ("Banks"). The latter two, each located in Oregon, are seeking $1 million in damages from Debtor. Affidavit of Herb Koenig, Dckt. No. 12, ¶ 4 (December 19, 2008).

Rayonier separately served Debtor in Oregon on August 8, 2008, and FinScan in Finland on September 29, 2008. Response, Dckt.No. 10, Part 1, pg. 6. Debtor filed its answer on September 15, 2008. Motion to Remand, Dckt.No. 9, Exhibit C. FinScan separately filed its answer and filed a cross-claim for common law indemnity against Debtor on October 29, 2008. Id., Exhibit D. Thereafter, on October 29, Debtor filed Chapter 11 in the District of Oregon. Id., Exhibit E, and FinScan filed a Notice of Removal in this Court to remove the underlying state court case against both FinScan and Debtor pursuant to 28

U.S.C. § 1452(a). <u>Notice</u>, Dckt.No. 1, Part 2.

On November 21, 2008, Rayonier filed a motion to remand the underlying state court litigation to the Superior Court in Emmanuel County and/or for this Court to abstain from hearing the state court litigation. <u>Motion to Remand</u>, Dckt.No. 9. On December 19, 2008, Debtor filed a motion pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 7087 to transfer the venue of the removed action to the United States Bankruptcy Court for the District of Oregon, the court in which Debtor has filed its Chapter 11. <u>Motion to Transfer Venue</u>, Dckt.No. 11.

On December 12, 2008, in the Bankruptcy Court for the District of Oregon, the United States Trustee, Robert D. Miller, Jr. filed a Motion to Dismiss Debtor's Chapter 11 or convert it to Chapter 7. He alleged that at the meeting of creditors on December 2, 2008, Tyrell B. Vance and Herbert Koenig, the President and Vice-President of Debtor for the two months prior to the meeting, testified as the representatives of Debtor. The Trustee states that the representatives "did not have sufficient knowledge and understanding of the debtor's financial affairs, assets and liabilities to be able to fully answer questions arising from the debtor's bankruptcy schedules and statement of financial affairs," thus the meeting of creditors was continued to a later date. The Trustee also asserts that Debtor is not an operating business, its principal place of business was shut down pre-petition, its books, records and some miscellaneous office furniture and equipment are apparently located at the

premises of its bookkeeper, Ken Davis, and at Mr. Vance's personal residence, it has no employees other than Mr. Vance and Mr. Koenig, and its assets consist primarily of cash in bank accounts, accounts receivable, possible preferences and fraudulent transfers. Finally, Trustee also points out that Debtor listed unsecured creditors totaling $5,224,018.45 and no secured or priority creditors. The Trustee argues that Debtor originally contemplated filing a Chapter 7, but "determined to file a Chapter 11 instead to control the defense of litigation brought against it by Rayonier," its largest unsecured creditor. <u>Reply to Defendant's Responses</u>, Dckt.No. 18, Exhibit A. Rayonier, Interfor Pacific, and Banks Lumber joined in the United States Trustee's Motion to Dismiss or Convert. <u>Reply</u>, Dckt. No. 21, Exhibits 2, 6, 7 (Feb. 2, 2009).

Three issues are presented based on the motions and timely replies filed by all Respondents. First, whether this Court has subject matter jurisdiction over the state law claims under 28 U.S.C. § 1452(a). Second, whether this Court should consider Rayonier's Motion to Remand and/or for Abstention first or Debtor's Motion to Transfer Venue. Third, whether the facts of this case warrant remand.

### **CONCLUSIONS OF LAW**

#### **1. Subject Matter Jurisdiction**

When presented with a motion to remand or a motion to transfer the venue of a proceeding which has been removed from the state court, "the bankruptcy court must

first evaluate whether the state court action was properly removed; that is, it must determine whether it has subject matter jurisdiction over the proceeding." Work/Family Directions, Inc. v. Children's Discovery Centers, Inc. (In re Santa Clara County Child Care Consortium), 223 B.R. 40, 44 (1st Cir.B.A.P. 1998). "If there is a jurisdiction defect and the parties and the action are not properly before the Court, any action taken by the Court would be void." Aztec Indus., Inc. v. Standard Oil Co. (In re Aztec Indus.), 84 B.R. 464, 467 (Bankr.N.D.Ohio 1987); see Pacor, Inc. v. Higgins, 743 F.2d 984, 993 (3d Cir. 1984) *overruled on other grounds by* Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134-35 (1995); George Junior Republic in Pa. v. Williams, slip op., 2008 WL 763304, at *3 (E.D.Pa. March 19, 2008); Everett v. Friedman's, Inc., 329 B.R. 40, 41-2 (S.D.Miss. 2005); Tallo v. Gianopoulos, 321 B.R. 23, 27 (E.D.N.Y. 2005); Ni Fuel Co. v. Jackson, 257 B.R. 600, 607-09 (N.D.Okla. 2000); Baxter Healthcare Corp. v. Hemex Liquidation Trust, 132 B.R. 863, 865 (N.D.Illinois 1991); Lone Star Indus., Inc. v. Liberty Mut. Ins., 131 B.R. 269, 272 (D.Del. 1991); Cornerstone Dental, PLLC v. Smart Dental Care, LLC, 2008 WL 907374, at *2 (Bankr.D.Idaho March 31, 2008)("there is case law that instructs courts facing such competing motions to first decide jurisdictional issues . . . "); Frelin v. Oakwood Homes Corp., 292 B.R. 369, 376 (Bankr.E.D.Ark. 2003); In re Grace Cmty., Inc., 262 B.R. 625, 629 (Bankr.E.D.Pa. 2001) ("Jurisdiction is always a threshold issue; the better approach is to determine first if an action has been properly removed and if the court has subject matter jurisdiction."); In re Raymark Indus., Inc., 238 B.R. 295, 297-98 (Bankr.E.D.Pa. 1999); Cook v. Cook, 215 B.R. 975, 978-79 (Bankr.E.D.Mich. 1997); Seybolt v. Bio-Energy of Lincoln,

AO 72A
(Rev. 8/82)

7

Inc., 38 B.R. 123, 126-27 (Bankr.D.Mass. 1984).

The removal of state court actions to a bankruptcy court is provided for in 28 U.S.C. § 1452(a), which states that "[a] party may remove any claim or cause of action in a civil action... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(b), which delineates jurisdiction over bankruptcy proceedings, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district court may refer bankruptcy jurisdiction to the bankruptcy court pursuant 28 U.S.C. § 157(a). Thus, a party may remove a cause of action from state court to the bankruptcy court if it is an action arising under Title 11, or "related to" a case under Title 11.

In determining whether a cause of action is "related to" a case under Title 11, the Eleventh Circuit adopted the Third Circuit's test in Pacor, Inc. v. Higgins, 743 F.2d. 984 (3d Cir. 1984).

> 'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively

or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.'

> Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990)(*quoting* Pacor, Inc., 743 F.2d at 994).

However, the Eleventh Circuit limited this "related to" jurisdiction by stating that

> [o]verlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors. The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b). Judicial economy itself does not justify federal jurisdiction.
>
> Id. at 789.

There is no question that the underlying state court action against Debtor is at least "related to" Debtor's bankruptcy. A finding against Debtor would alter its rights, liabilities, options, and freedom of action and impact the administration of its bankruptcy estate. As a result, the claims against Debtor have properly been removed, and this Court has subject matter jurisdiction over the claims.[2]

---

[2] Rayonier argues that Pacor, Inc. requires that this Court remand the action against FinScan for lack of subject matter jurisdiction. In that case the plaintiff Higgins brought suit against Pacor, Inc. ("Pacor") in the Court of Common Pleas for damages allegedly caused by his work-related exposure to asbestos products manufactured by Johns-Manville Corporation ("Manville") and distributed by Pacor. Pacor filed a third party complaint impleading Manville which subsequently filed bankruptcy in the United States Bankruptcy Court for the Southern District of New York. The Court of Common Pleas severed the third-party complaint against Manville. Just as the Higgins-Pacor case was about to go to trial, Pacor removed the controversy to the Bankruptcy Court in the Eastern

For the foregoing reasons, I hold that this Court has subject matter jurisdiction over the removed action.

### 2. Motion to Remand vs. Motion to Transfer Venue

Courts are divided about the sequence for ruling on competing motions to transfer or remand. In re Grace Cmty., Inc., 262 B.R. at 628. Some courts find and Defendants argue that the bankruptcy court in which the bankruptcy is pending (usually referred to as the "home court") is in the best position to determine the issues underlying motions to abstain or remand. See Work/Family Directions, Inc., 223 B.R. at 49; Everett, 329 B.R. at 42; Bayou Steel Corp. v. Boltex Mfg. Co., 2003 WL 21276338, at *1 (E.D.La. June 2, 2003); Nelson v. First Lenders Indem. Co., 1998 WL 378376, at *1 (N.D.Miss. May 11,

---

District of Pennsylvania and filed a motion for change of venue to the Southern District of New York in order to join it with the Manville bankruptcy. Pacor, Inc., 743 F.2d at 986.

Noting that "the jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is not without limit," the Third Circuit concluded that for the bankruptcy court to act within its statutory and constitutional limits and for subject matter jurisdiction to exist, "there must be some nexus between the 'related' civil proceeding and the title 11 case." Because neither of the parties in the case was the debtor in bankruptcy, the court questioned whether the action was "still sufficiently connected with the Manville bankruptcy estate, such that jurisdiction lies under 28 U.S.C. § [1334(b)]." Id. at 994.

The court concluded that the outcome of the Higgins-Pacor action would in no way bind Manville, but was "at best, . . . . a mere precursor to the potential third party claim for indemnification by Pacor against Manville . . . . Any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligate to bring an entirely separate proceeding to receive indemnification." Id. at 995.

In the present case, unlike Pacor, FinScan is an original defendant in the underlying state court action against whom relief is requested and not merely a third party defendant. The claims against FinScan are interlocking and overlapping the claims against Debtor, and Rayonier's claims against Debtor have not been severed from the claims against FinScan. See Hopkins v. Plant Insulation Co., 342 B.R. 703, 709-10 (D.Del. 2006)(Court found "related to" jurisdiction existed in part because non-debtor's claims against another non-debtor were "factually interwoven" with the claims against the debtor.); In re Allegheny Health, Educ. and Research Found., 233 B.R. 671, 679-80 (Bankr.W.D.Pa. 1999); Seybolt, 38 B.R. at 128.

1998); Consol. Lewis Inv. Corp. v. First Nat'l Bank, 74 B.R. 648, 651 (E.D. La. 1987); Cornerstone Dental, PLLC, 2008 WL 907374, at *1; Philadelphia Health Care Trust v. Tenet Health Sys. Philadelphia, Inc. (In re Allegheny Healthy, Education and Research Foundation), 1999 WL 1033566, at *1 (Bankr.E.D.Pa. Nov. 10, 1999); Thomas v. Lorch, Wedlo, Inc. (In re Wedlo, Inc.), 212 B.R. 678, 679 (Bankr.M.D.Ala. 1996); Kinney Sys., Inc. v. Intermet Realty P'ship (In re Convent Guardian Corp.), 75 B.R. 346, 347 (Bankr.E.D.Pa. 1987); Stamm v. Rapco Foam, Inc. (In re Stamm), 21 B.R. 715, 724-25 (Bankr.W.D. Pa. 1982).

The theory underlying this argument "is often referred to as the 'conduit' court theory because it treats the local bankruptcy court as a mere conduit with little role in determining where the removed lawsuit should be heard." Frelin, 292 B.R. at 380. These courts argue that the "home court" is "more familiar with the pending bankruptcy case and what may be required for its efficient administration." Furthermore, the "home court" "which would try the case can better evaluate all the interests involved, and determine its own expertise in the particular areas of the law which form the basis of the action, as well as its own scheduling and time constraints." The "conduit" court's "speculation on these matters would not be an adequate substitute for a knowledgeable determination based upon the actual facts and circumstances." Moreover, allowing the "home court" "to rule on the remand minimizes the potential conflicts which could arise due to differences in controlling authority between the Courts." In re Aztec Indus., Inc., 84 B.R. at 467; see George Junior Republic in

Penn., 2008 WL 763304, at *5-6; Tallo, 321 B.R. at 28-9; Hohl v. Bastian, 279 B.R. 165, 177-78 (W.D.Penn. 2002); Seybolt, 38 B.R. at 128.

Another line of case law holds that the bankruptcy court to which the state court lawsuit is removed ('the local bankruptcy court') has the right to decide a pending motion to abstain or remand before determining whether venue is proper in the home bankruptcy court. Frelin, 292 B.R. at 379; *see* Kim Littlefield, DMD, P.C. v. Orthodontic Ctrs. of Ill., Inc. 2007 WL 273766, at *2 (S.D.Ill. Jan. 26, 2007); Lemmings v. Second Chance Body Armor, Inc., 328 B.R. 228, 231 (N.D.Okla. 2005); Ni Fuel Co., 257 B.R. at 611-12; Lone Star Indus., Inc., 131 B.R. at 272-73; Baxter Healthcare Corp., 132 B.R. at 867; Gabel v. Engra, Inc. (In re Engra, Inc.), 86 B.R. 890, 893 (S.D.Tex. 1988); In re W.S.F.-World Sports Fans, LLC, 367 B.R. 786, 791 (Bankr.D.N.M. 2007); In re Grace Cmty., Inc., 262 B.R. at 629; In re Raymark Indus., Inc., 238 B.R. at 299; Global Underwriting Mgmt., Inc. v. Chatham Underwriting Mgmt., Inc., 147 B.R. 601, 603 (Bankr.S.D.Fla. 1992).

I adopt the latter holding because "this line of cases provide strong statutory and logical support for the proposition that the local bankruptcy court should decide '*whether any* bankruptcy court should hear a proceeding before it determines *which* bankruptcy court should hear it.'" Frelin, 292 B.R. at 379 (*quoting* Lone Star Indus., Inc., 131 B.R. at 273). First, the District Court for the Southern District of Texas reasoned that

> If removal were jurisdictionally appropriate only to the district where the debtor filed for bankruptcy, removal of proceedings pending in other districts with an eye towards transferring the removed proceeding to the district where the bankruptcy was filed would not be possible since removal under section 1452(a) is permissible only to the district where the action is pending. Such a result would be at odds with the aim of section 1452 of providing a procedural vehicle whereby a bankruptcy court can determine whether a proceeding should be heard by the bankruptcy court or should be remanded to the court from which it was removed.
>
> In re Engra, Inc., 86 B.R. at 893.

Second, "the language of 28 U.S.C. § 1452(b) and § 1412 suggest a more active role for the local bankruptcy court." Section 1412 provides that "the transfer of a case from a local bankruptcy court to a home bankruptcy court is discretionary rather than mandatory or automatic." Moreover, "the provision governing the remand of actions removed to federal court states that '[t]he court to which a claim or cause of action is removed' is the court that should determine whether to remand the matter to state court based on equitable grounds.' 28 U.S.C. § 1452(b)." In sum, "the language of both § 1412 and § 1452(b) support that this court has the responsibility to make the decision of whether to transfer the case to the home bankruptcy court or remand the matter to state court." In re AG Indus., Inc., 279 B.R. 534, 540 (Bankr.S.D.Ohio. 2002)(internal citations omitted)(*citing see* SBKC Serv. Corp. v. 1111 Prospect Partners, L.P. (In re 1111 Prospect Partners, L.P.), 204 B.R. 222, 225-26 (Bankr.D.Kan. 1996); Twyman v. Wedlo, Inc., 204 B.R. 1006, 1013-14 (Bankr.N.D.Ala. 1996)). I therefore proceed directly to the remand/abstention analysis.

### 3. Discretionary Abstention and Equitable Remand

Remand to the court from which a claim for relief or cause of action has been removed is authorized by 28 U.S.C. § 1452(b), which allows this Court to remand the underlying state court litigation "on any equitable ground." Discretionary abstention is governed by 28 U.S.C. § 1334(c)(1), which provides a bankruptcy court may abstain from hearing a proceeding arising in or related to cases under title 11, when to do so is in the interest of justice, or in the interest of comity with state courts or respect for state law.

Discretionary abstention and equitable remand are "kindred statutes." Both favor "comity and the resolution of state law questions by state courts." Thus, the "factors suggesting discretionary abstention... and mandatory abstention... provide ample equitable grounds for remand of a lawsuit to state court" and vice versa. St. Vincent's Hosp. v. Norrell (In re Norrell), 198 B.R. 987, 997-98 (Bankr.N.D.Ala. 1996); see Hatcher v. Lloyd's of London, 204 B.R. 227, 232-33 (M.D.Ala. 1997)("courts are in agreement that the factors applicable to [discretionary abstention, mandatory abstention, and equitable remand] are relevant in determining whether the court should exercise jurisdiction."); Borne v. New Orleans Health Care, Inc., 116 B.R. 487, 494 (E.D.La. 1990)("[T]he considerations underlying discretionary abstention and remand are the same."); Cook v. Griffin, 102 B.R. 875, 877 (N.D.Ga. 1989)("[I]t is clear that the provisions for mandatory abstention are strong factors suggesting equitable remand under § 1452(b)."); Thomasson v. AmSouth Bank, N.A., 59 B.R. 997, 1002 (N.D.Ala. 1986)(The presence of facts supporting abstention, when

coupled with related considerations of comity and preference for the resolution of state law questions by state courts, implied in section 1452(b), "tips the scales of equity in favor of remand..."); In re Hilsman, 351 B.R. 209, 217 (Bankr.N.D.Ala. 2006).

Therefore, "courts considering relief under these sections consider similar factors." These include: (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. In re United Container LLC, 284 B.R. 162, 176-77 (Bankr.S.D.Fla. 2002)(citations omitted); see In re Fulton, 2000 WL 33952875, at * 3 (Bankr.S.D.Ga. June 29, 2000)(Davis, J.)(factors for discretionary abstention); Rentrak Corp. v. Cady (In re Cady), 1994 WL 16001762, at *3, n. 13 (Bankr.S.D.Ga. March 11, 1994)(Walker, J.)(same); Republic

Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc., (In re Republic Reader's Serv., Inc.), 81 B.R. 422, 429 (Bankr.S.D.Tex. 1987)(same); In re Brooks, 389 B.R. 790, 794 (Bankr.M.D.Fla. 2008)(factors for equitable remand); Hatcher, 204 B.R. at 233 (same).

Here, virtually every relevant factor points to remand/abstention. First, comity and respect for state jurisdiction are compelling considerations in this case. Debtor and Rayonier bargained for and agreed to litigate any disputes in the Superior Court of Emanuel County. If Debtor was acting as agent for FinScan when that choice of law provision was executed, FinScan could be bound as well. Regardless, because FinScan now owns 100% of Debtor and at the time of the contract, owned a minority share in Debtor, it was "closely related" and it is therefore "foreseeable" it would be bound.[3] See Lipcon v. Underwriters at Lloyd's London, 148 F.3d 1285, 1299 (11th Cir. 1998). Debtor did not remove this action because it could not, and FinScan, which did remove this action, cannot invoke bankruptcy pre-eminence as to claims against it because it is not a debtor. Nor does Finscan have standing, merely because it filed a crossclaim against Debtor, to invoke bankruptcy pre-eminence as to claims against Debtor on Debtor's behalf.

Second, it is entirely feasible to permit the state law issues of liability and damages to be litigated in Superior Court. To the extent that Debtor is found liable,

---

[3] In fact, the user manual for the Boardmaster G54NT/FS4NT software displays FinScan's slogan as "what we see is what you saw." This same slogan is provided at the bottom of every single page of the contract between Rayonier and Debtor.

AO 72A
(Rev. 8/82)

16

enforcement of the claim against it will remain in the hands of the home bankruptcy court, a result which satisfies the only federal interest in this case.

Third, as to the claims against FinScan, it is appropriate for them to be litigated in state court as well because no federal interest is implicated, the case was pending in the state court prior to the filing of Debtor's Chapter 11, and can be timely adjudicated there.

Fourth, both defendants have a right to a jury trial as to the claims asserted, a right that cannot be provided in this bankruptcy forum.

Finally, in light of the pending motion to dismiss or convert to Chapter 7 in the Bankruptcy Court for the District of Oregon, it is impossible to know whether that bankruptcy case will survive long-term. Without commenting on the validity of the forum-shopping assertions made by the Trustee in that case, the potential of a dismissal or conversion of that case is apparent. The prospect, no matter how remote, of dismissal or conversion of that case removes even the few tenuous considerations that favor retaining this action in a bankruptcy forum. Thus, Factors 1, 2, 4, 6, 8, 11, 12, and 13 clearly call for abstention and remand.[4]

---

[4] In its reply in support of the Motion to Transfer Venue, Debtor argues that because "Rayonier has made the calculated choice to appear and actively litigate against both [Debtor] and FinScan in [Debtor's] bankruptcy proceeding in Oregon," that Rayonier "has recognized that the Oregon bankruptcy court is the appropriate and necessary place to be." Reply, Dckt. No. 21, pg.1. I disagree. Rayonier has explicitly stated that it would rather litigate the underlying state court claims in the Superior Court of Emmanuel County. While litigating these

17

ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS ORDERED that this Court abstains from further consideration of this civil action.

IT IS FURTHER ORDERED that this action is remanded to the Superior Court of Emanuel County of the State of Georgia for adjudication in that forum.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 25th day of February, 2009.

---

motions, it would be irresponsible of Rayonier to not also participate in Debtor's bankruptcy, especially a Motion to Dismiss which could give Rayonier relief from Debtor's bankruptcy entirely.